ACCEPTED
05-19-00224-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/18/2019 5:17 PM
LISA MATZ
CLERK

**No. 05-19-00224-CV**

**COURT OF APPEALS**
**for the**
**FIFTH DISTRICT OF TEXAS**
**Dallas, Texas**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/18/2019 5:17:50 PM
LISA MATZ
Clerk

**CHRISTINE FLOREZ DESIO D/B/A PROFESSIONAL CENTER OF GRAND PRAIRIE AND FRACIS ANTHONY DESIO, JR. A/K/A FRANK DESIO, INDIVIDUALLY,** *Appellants*

**v.**

**MIKE DEL BOSQUE D/B/A INJURY AND REHAB CENTER IN GRAND PRAIRIE,**
*Appellee*

**Original Proceeding from the 14th Judicial District Court of Dallas County, Texas**
*Honorable Judge Eric V. Moyé, Presiding*
*Trial Court Cause No. DC-17-04408*

**APPELLEE'S BRIEF**

**TAILIM SONG LAW FIRM**

Tailim Song
State Bar No. 00792845
Tel:　(214) 528-8400
Fax:　(214) 528-8402
8111 Lyndon B. Johnson Freeway Suite 480
Dallas, Texas 75251
Email:　tsong@tailimsong.com
*ATTORNEY FOR APPELLEE*

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rules of Appellate Procedure Rule 52.3(a), Appellee hereby certifies that the following is a complete list of all parties, attorneys, and any other persons who have any interest in the outcome of this lawsuit.

| | |
|---|---|
| Appellants: | Christine Florez Desio d/b/a Professional Center of Grand Prairie and Francis Anthony Desio, Jr. a/k/a Frank Desio, Individually |
| Counsel for Appellant: | BUSH RUDNICKI SHELTON, P.C.<br>Grant A. Bannen<br>State Bar No.  00793300<br>200 N. Mesquite St., Suite 200<br>Arlington, Texas 76011<br>Tel:     (817) 274-5992<br>Fax:    (817) 261-1671 |
| Appellees: | Mike Del Bosque d/b/a Injury and Rehab Center in Grand Prairie |
| Counsel for Appellee: | TAILIM SONG LAW FIRM<br>TAILIM SONG<br>State Bar No.  00792845<br>tsong@tailimsong.com<br>JORDAN WHIDDON<br>State Bar No. 24093350<br>jwhiddon@tailimsong.com<br>8111 LBJ Freeway, Suite 480<br>Dallas, Texas 75251<br>Tel:     (214) 528-8400<br>Fax:    (214) 528-8402 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................................ 2

INDEX OF AUTHORITIES .................................................................................................... 4

RECORD REFERENCES ...................................................................................................... 7

STATEMENT OF THE CASE ................................................................................................. 8

STATEMENT OF JURISDICTION ........................................................................................... 9

STATEMENT REGARDING ORAL ARGUMENT ..................................................................... 9

ISSUES PRESENTED ........................................................................................................... 9

STATEMENT OF FACTS ..................................................................................................... 10

SUMMARY OF THE ARGUMENT ....................................................................................... 13

ISSUE NUMBER 1: The Trial Court Properly Held that Appellants Breached the Second Floor Leases as there was No Ambiguity as to The Contracts ........................................................... 17
    *A.   Standard of Review* ............................................................................................. *17*
    *B.   The Second Floor Leases are Not Ambiguous* ................................................... *18*

ISSUE NUMBER 2: The Trial Court Properly Held that Appellants Breached the Second Floor Leases as Appellants Did Not Post Notice Pursuant to Property Code Section 93.002(F) in Addition to Their Contractually Obligated Notice Requirements. ............................................... 21

ISSUE NUMBER 3: The Trial Court Properly Held that There is Not a Specific Contract Provision that Prevails Over General Contractual Provisions. ...................................................... 22
    *A.   Standard of Review* ............................................................................................. *23*
    *B.   Appellants Breached the Contract for the First and Second Floor Leases* .................. *24*

ISSUE NUMBER 5: The Trial Court Properly Held that Appellants Prior Materially Breached and Failed to Mitigate Damages ............................................................................................ 28

ISSUE NUMBER 6: The Trial Court Properly Held that Appellee was Entitled to Reasonable and Necessary Attorney's Fees Because He was the Prevailing Party .......................................... 29
    *A.   Appellee Is Entitled to Attorney's Fees Because Appellee Prevailed On The Indistinguishable Counterclaim.* ......................................................................................... *32*
    *B.   Attorneys' Fees Granted Were Reasonable and Not Excessive* .................................. *34*

ISSUE NUMBER 7: The Trial Court Properly Held That Appellants Tortiously Interfered with the Contract, Tortiously Interfered with prospective Contracts, That Appellants Trespassed on Real Property, and Appellants Committed Conversion ................................................................ 35

CONCLUSION ................................................................................................................... 40

PRAYER ........................................................................................................................... 40

CERTIFICATE OF COMPLIANCE ....................................................................................... 41

CERTIFICATE OF SERVICE ............................................................................................... 41

## INDEX OF AUTHORITIES

**Cases**

*Anderson v. City of Seven Points*, 80 S.W. 2d 791, 794 (Tex. 1991). .......................................... 21

*Ashcraft v. Lookadoo*, 952 S.W. 2d 907, 911 (Tex. App.—Dallas 1997, pet. denied)................. 21

*Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.* 948 S.W.2d 293, 299 (Tex. 1997) ...... 36

*Ayoub v. Montelongo.* 2001 WL 695521 (Tex. App.—El Paso, June 21, 2001, no pet.)............. 27

*Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ................................................................... 49

*Brockie v. Webb*, 244 S.W.3d 905 (Tex. App.—Dallas, 2008) .................................................... 41

*Cain v. Bain*, 709 S.W. 2d 175, 176 (Tex. 1986)......................................................................... 21

*Cedar contracting, Inc. v. Hernandez*, No. 03-11-00327-CV, 2014 WL 709560, *1, *4 (Tex. App.—Austin Feb. 21, 2014, pet. denied) .................................................................................. 28

*Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ...................................................................... 24

*Da Oca v. Gutierrez*, No. 03-14-00668-CV, 2017 WL 393569 *4 (Tex. App.—Austin Jan. 25, 2017, no pet.) .............................................................................................................................. 26

*De La Rosa v. Kaples*, 812 S.W.2d 432, 434 (Tex. App.—San Antonio 1991, writ denied). 41, 42

*F.D.I.C. v. F & A Equip. Leasing,* 854 S.W.2d 681, 685 (Tex. App.—Dallas 1993, no writ.).... 22

*Farrar v. Hobby*, 113 S.Ct. 566, 506 U.S. 103 (1992) .......................................................... 37, 38

*First Wichita National Bank v. Wood*, 632 S.W.2d 210 (Tex. App.—Fort Worth 1982, no writ)41

*Frank v. Kuhnreich*, 546 S.W.2d 844, 848 (Tex. Civ. App.—San Antonio 1977, writ. ref'd n.r.e.) ................................................................................................................................................... 24

*Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) ................................................................... 44

*Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App.—Austin, 2001)................................................ 44

*Hooker v. Constellation Homebuilder Sys., Inc.*, 2008 WL 4057909, No. CIV. A. V-06-77, (S.D. Tex. Aug. 26, 2008) ................................................................................................................... 42

*Hughs v. Lee*, 1997 WL 605080, No. 05-95-0145-CV (Tex. App.—Dallas Oct. 1, 1997) .......... 23

*Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009) ...... 37, 38

*Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.) ........................................................................................... 20

*Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 36 (Tex. App. 2017)......... 49

*McConnell v. Coventry Health Care Nat'l Network*, No. 05-13-01365-CV, 2015 WL 4572431, (Tex. App. July 30, 2015) ..................................................................................... 47

*Metroplex Glass Cent., Inc. v. Vantage Props., Inc.*, 646 S.W.2d 263, 265 (Tex. App.—Dallas 1983, writ refused n.r.e.) ........................................................................................... 48

*Moreno v. Reliable Insulation, Inc.*, 217 S.W.3d 769, 770-71 (Tex. App.—Dallas, 2007) ......... 44

*Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196, 198 (Tex. 2004) (per curiam) ...................................................................................................................... 35

*Navigant Consulting, Inc. v. Wilkinson*. 208 F.3d 277, 298 (5th Cir. 2007) ................................ 40

*Ortiz v. O.J. Beck and Sons, Inc.*, 611 S.W.2d 860 (Tex. App.—Corpus Christi 1980, no writ.) 41

*Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.) ............................................................................................................... 30

*Ponderosa Pine Energy, LLC v. Illinova Generating Co.*, No. 05-15-00339-CV, 2016 WL 3902559 (Tex. App.—Dallas July 14, 2016, no pet.) ............................................................... 22

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ................ 46

*R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980) .................... 23

*Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881-82 (Tex. 1990) ......................... 44

*Scott Pelley P.C. v. Wynne,* No. 05–15–01560–CV, 2017 WL 3699823, (Tex. App.—Dallas Aug. 28, 2017, pet. denied) ...................................................................................... 22, 51

*Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 788 (Tex. 1966). .............................. 23, 25

*Small v. Parker Healthcare Mgmt. Org.,* No. 05-11-01471-CV, 2013 WL 5827822, (Tex. App.—Dallas, Oct. 29, 2013) ........................................................................................... 21

*Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009).............................................. 37

*Tony Gullo Motos I, L.P. v. Chapa*, 212 S.W.3d, 50 Tex. Sup. Ct. J. 278 (Tex. 2006) ......... 40, 41

*Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894 (Tex. App.—Austin 2010, no pet.). 28

*Tuttle v. Builes*, 2019 WL 1301881, No. 11-17-00096-CV, (Tex. App.—Eastland, 2019) ......... 37

*Veale v. Rose*, 657 S.W.2d 834, 841 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) 41, 42

*Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, (Tex. Apr. 26, 2019) .................................................................................................................................... 43, 45

*Wells Fargo Bank Minnesota, N.A. v. Kobernick*, No. 8-CV-1458, 2009 WL 7808949, (S.D. Tex. May 29, 2009) ................................................................................................................... 28

*Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied)............ 49

*Wilkins v. Bain*, 615 W.S.2d 314 (Tex. Civ. App.—Dallas 1981, no writ) ................................... 41

*Williamson v. Tucker*, 615 S.W.2d 881 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) ................... 41
**Statutes**

TEX. PROP. CODE § 93.002(c) ............................................................................................. 32, 50

TEX. PROP. CODE § 93.002(f)............................................................... 17, 25, 26, 27, 32, 33

V.T.C.A., Civil Practice & Remedies Code § 38.001 ........................................................... 37, 41

**RECORD REFERENCES**

The Record citing conventions contained below are used throughout this Brief of Appellee.

___ CR ___, ¶ ___.        The Clerk's Record (The first blank is the volume number, the second blank is the page number that the document begins, and the third blank is the pinpoint cite e.g., 1 CR 4, ¶ 5-6).

___ RR p.___, line___.        The Reporter's Record from the Jury Trial (The first blank is the volume number and the second blank is the page number(s) and line number(s) e.g., 1 RR p. 20, lines 12-20.)

Ex. P-___.        Appellant/Plaintiff's exhibits to the Reporter's Record

**STATEMENT OF THE CASE**

| | |
|---|---|
| *Nature of the Case:* | The case on appeal concerns the Appellants' breach of their contracts as contained in their First and Second Floor Leases with Appellee as well as Appellants' violations of Texas Property Code notice provisions. |
| *Final Judgment signed by:* | The Honorable Eric V. Moyé, Judge Presiding, signed the Final Judgment on December 19, 2018. C.R. 446-448. The Honorable Eric V. Moyé, Judge Presiding, entered Findings of Fact and Conclusions of Law on January 18, 2019. C.R. 545-461. |
| *Trial Court:* | 14th Judicial District Court, Dallas County, Texas |
| *Final disposition by Trial Court:* | On November 13, 2018, the trial court, the Honorable Eric V. Moyé, Judge Presiding, presided over the bench trial in this matter. 2 R.R. 1. On December 19, 2018, the Honorable Eric V. Moyé heard Appellee's Motion for Entry of Judgment and signed the Final Judgment presented by Appellee at the hearing. C.R. 446. On January 18, 2019, the trial court enter Findings of Fact and Conclusions of Law. On March 8, 2019, Appellants requested additional findings of fact and conclusions of law which were contrary to the trial court's findings and were thereby denied. |

## STATEMENT OF JURISDICTION

This Court has jurisdiction to hear this appeal under Texas Constitution Article 5, Section 6 and under Texas Government Code Section 22.220.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully requests oral argument in this case, as it may aid the Court in determining the issues presented. Tex. R. App. P. 39.7. This Case raises significant issues related to breach of contract and violations of the Texas Property Code. Additionally, this case addresses issues of contract interpretation and the awarding of attorneys' fees. Oral argument would afford the Court the opportunity to question the parties and reach a decision on these matters.

## ISSUES PRESENTED

1. **The Trial Court Properly Held that Appellants Breached the Second Floor Leases as there was No Ambiguity as to The Contracts.**
   a. **Standard of Review**
   b. **The Second Floor Leases are Not Ambiguous**

2. **The Trial Court Properly Held that Appellants Breached the Second Floor Leases as Appellants Did Not Post Notice Pursuant to Property Code Section 93.002(F) in Addition to Their Contractually Obligated Notice Requirements.**

3. **The Trial Court Properly Held that There is Not a Specific Contract Provision that Prevails Over General Contractual Provisions.**

4. **Appellants Breached the Contract for the First and Second Floor Leases When They Intentionally Deprived Appellee from Entering the Leasehold and Appellee Could No Longer Enjoy the Use of The Leasehold.**

   a. **Standard of Review**
   b. **Appellants Breached the Contract for the First and Second Floor Leases**

5. **The Trial Court Properly Held that Appellants Prior Materially Breached and Failed to Mitigate Damages.**

6. **The Trial Court Properly Held that Appellee was Entitled to Reasonable and Necessary Attorney's Fees Because He was the Prevailing Party**

      **a. Appellee Is Entitled to Attorney's Fees Because Appellee Prevailed on The Indistinguishable Counterclaim**

      **b. Attorneys' Fees Granted Were Reasonable and Not Excessive**

**7. The Trial Court Properly Held That Appellants Tortiously Interfered with the Contract, Tortiously Interfered with prospective Contracts, That Appellants Trespassed on Real Property, and Appellants Committed Conversion**

## STATEMENT OF FACTS

Mike DelBosque d/b/a Injury and Rehab Center ("Appellee") had a commercial lease for Suite 101 ("First Floor Lease") and three written commercial leases for Suite 200-202, Suite 206, and Suite 207/208 (collectively "Second Floor Leases") with Appellants Christine Florez Desio d/b/a Professional Center of Grand Prairie. Appellant Francis Anthony Desio was the agent of Ms. Florez Desio and property manager of all the relevant Premises and corresponding leases (hereinafter, collectively, "Appellants").

The Second Floor Leases were written contracts drafted by Appellants. In the Second Floor Leases, Section 13.5 of the Second Floor Leases defined abandonment as "[f]ailure of Tenant for five (5) days or more to occupy the Premises for one or more of the purposes permitted under this Lease, unless such failure is excused under other provisions of this Lease." 4 RR p. 180. Section 13.3 further provided that "[f]ailure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges) within twenty (20) days after written notice by Landlord specifying the nature of the default with reasonable particularity." 4 RR p. 179. Thus, the contract only excepted the twenty (20) day notice requirement and opportunity to cure for failure to pay rent and no other reasons.

On November 28, 2016, prior to sending any written or other notice, Appellants locked the Appellee out of the leasehold by changing the locks on the doors to the Second Floor Leases. Appellants' sole basis for the lockout out was alleged abandonment. 2 RR p. 47. Appellants

testified Appellee still had personal property in the leasehold at the time of lockout. 2 RR p. 16. Remaining items included, but are not limited to, three refrigerators, a copy machine, office furniture, and office supplies. 1 CR 455, ¶ 7. Following the lockout, Appellants then called the scrapyard to retrieve and dispose Appellee's personal property despite Appellee orally telling Appellants he intended to retrieve possession of the property. 2 RR p. 29-31.

Additionally, Appellee testified he never intended to move out. 2 RR p. 79. Appellee even offered to continue to pay rent for the Second Floor Leases. 2 RR p. 31, lines 102-103. Appellee never at any time received a request for payment of further rent and never received his deposits back. 2 RR p. 103. Only after the lockout and refusal by Appellants to provide the benefit of the property did Appellee fail to pay rent for January. 2 RR p. 104. At the time of the lockout, Appellee was current on rent and had even prepaid the entire rent due for the month of December. 1 CR 455, ¶ 6. Additionally, at the time of the lockout, Appellee had not abandoned the property. 1 CR 455, ¶ 15. He did not leave the leases unoccupied. *Id*.

Following the November 30th lockout, Appellee was refused access to the Second Floor Leases and refused new keys. 1 CR 456, ¶ 20-22; 2 RR p. 31, 50. Further, the security deposits of the Second Floor Leases were never returned to Appellee. 2 CR 457, ¶ 31. Also, there was no evidence presented that Appellants attempted to mitigate their alleged damages. 2 RR p. 108.

Landlord thereby breached the Second Floor Leases pursuant to the express contracts between the parties contained in the First Floor Lease and Second Floor Leases when it prematurely locked out Appellee for alleged abandonment even though five (5) days had not passed and no notice or opportunity to cure was provided. Appellant Francis Anthony Desio admitted at trial that he never gave Appellee notice or opportunity to cure. 2 RR p. 70. Appellee

testified at trial that he never received notice of default or an opportunity to cure. 2 RR p. 32, lines 105-106.

Written notices of default were not posted until January 21, 2017—fifty-two (52) days after Appellants locked out Appellee. 1 CR 456, ¶ 21; 2 RR p. 25. Even when these notices were posted, they did not identify abandonment as the reason for lockout or default. Appellant Francis Anthony Desio conceded that this notice did not give the contractually agreed to twenty (20) day notice to cure. 2 RR p. 112.

On March 30, 2017, Appellants locked Appellee out of the First Floor Lease. 1 CR 457, ¶ 35. At the time of the lockout, Appellee was current on rent and otherwise not in default. 1 CR 457, ¶ 36-37. Additionally, at the time of lockout, Appellants gave no written notice and no contact information for an individual or business from whom a new key could be retrieved. 1 CR 457, ¶ 36. Appellee was forced to obtain a writ of reentry. 2 RR p. 43. Appellee then sought a temporary restraining order to resume operations. 2 RR p. 44.

Following the issuance of a temporary restraining order and writ of reentry, Appellants again locked Appellee out of the First Floor Lease. 2 RR p. 44. On April 12, 2017, Appellants forced healthcare professionals, staff, and their patients to leave the first-floor leasehold. 1 CR 457, ¶ 41. Appellants then chained the door shut with a large metal chain and padlock. 1 CR 457, ¶ 42. On April 13, 2017, Appellee's marquee sign was removed by Appellants. 1 CR 457, ¶ 43. Appellants retained the entirety of the First Floor Lease's security deposit, totaling $2,552.00. 1 CR 458, ¶ 50. Further, as a result of these lockouts, Appellee was damaged as he lost clients and business. Patients were locked out and Appellee was not able to get the patients again. 2 RR p. 83-85.

The trial court found in favor of Appellee and as the prevailing party, Appellee was entitled to attorney's fees.

## SUMMARY OF THE ARGUMENT

The trial court properly held that Appellants breached the Second Floor Leases as there was no ambiguity as to the contract between Appellee and Appellants as contained in the Second Floor Leases. Pursuant to the Second Floor Leases, Appellants breached the Second Floor Leases when Appellants locked out Appellee and Appellee was not given notice or an opportunity to cure the Second Floor Leases prior to the lockout.

Section 13.3 of the Second Floor Leases that was prepared by Appellants explicitly states,

> "[f]ailure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges) within twenty (20) days after written notice by Landlord specifying the nature of the default with reasonable particularity."

Abandonment is an example of such "[f]ailure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges)." However, Appellants ask the Court to disregard the contract and intentionally exclude abandonment from the notice requirement that was contractually provided for in Section 13.3. Appellants argue that because Section 13.3 does not expressly state "abandonment," that abandonment should not be considered an event of default. But, there is no ambiguity here as Appellants suggest. Abandonment is an event of default, other than payment of rent or other charges, and as such, Appellants were required to give notice of default and an opportunity to cure to Appellee for his alleged abandonment of the Second Floor Leases. Appellants' interpretation would read the express notice provision out of the lease.

Further, Section 13.5 does not excuse Landlord's obligation to provide written notice of default. Section 13.5 states,

> "[f]ailure of Tenant for five (5) days or more to occupy the Premises for one or more of the purposes permitted under this Lease, unless such failure is excused under other provisions of this Lease."

The trial court did not add language to the contract as Appellants suggest. Rather, the trial court upheld the express language of the contract. Appellants make the argument that there is no notice requirement because Section 13.5 does not provide for a twenty-day notice. However, Sections 13.3 and 13.5 should be and were construed together. Read together, the five-day period prescribed in Section 13.5 does not become irrelevant as Appellants suggest. Rather, Section 13.5 defines abandonment as a "[f]ailure of Tenant for five (5) days or more to occupy the Premises" and once Tenant has failed to occupy the Premises for over five (5) days, it would be a deemed a default, thereby mandating the notice requirement outlined in Section 13.3.

In the alternative, should the Court find that there are any doubts as to the meaning of the language of the lease, it should be resolved against the Appellants.

Appellants also did not comply with Property Code 93.002(f), which is consistent with the Second Floor Leases. Property Code 93.002(f) requires that a written notice be place on the tenant's front door stating the name and the address or telephone number of the individual or company from which the new key may be obtained. However, here, notice was not provided as prescribed by the Property Code in addition to Appellants' failure to comply with its contractually obligated notice requirements. In fact, Appellants admitted no notice was posted pursuant to Property Code 93.002(f). 2 RR p. 33, lines 2-4.

Additionally, the present case does not deal with conflicting contractual provisions in which there is a specific contract provision that prevails over general contractual provisions.

Sections 15.3 and 15.5 of the Second Floor Leases are not conflicting. There is no language expressly stating that abandonment shall constitute default without the notice required by Section 15.3 or imposing an alternate notice requirement. The contract is clear. Abandonment is the "[f]ailure of Tenant for five (5) days or more to occupy the Premises" and in addition, abandonment is an event of default that is not for the payment of rent or other charges for which a twenty (20) day written notice specifying the nature of the default with reasonable particularity required. The fact that Section 15.5 does not contain its own specific notice provision is not sufficient to overcome the notice provision prescribed by Section 15.3.

Therefore, the trial court properly held that Appellants breached the Section Floor Leases when the trial court found notice of termination was sent post lock out and ineffective as a matter of law and the fact that Appellants sent notice after the fact insinuates that Appellants also believed there was notice requirement. Because Appellants committed prior material breach and on the Second Floor leases prior to Appellee allegedly abandoning the leasehold, the trial court properly found that Appellee did not breach the Second Floor Leases and that Appellants were the breaching party.

The trial court properly held that Appellants committed prior material breach of the Second Floor Leases, which discharged or excused Appellees from further performance. Appellants prematurely locked out Appellee for alleged abandonment even though five (5) days had not passed and no notice or opportunity to cure were provided thereby breaching the Second Floor Leases. As a result, Appellee was unable to operate its business and lost current and prospective patients.

The trial court properly held that Appellants failed to mitigate damages. Appellants never presented any evidence that they attempted to mitigate damages. As such, because of Appellants'

failure to reasonably attempt to mitigate damages, Appellants cannot recover against Appellee in that regard.

The trial court properly held that Appellee was entitled to attorneys' fees and that the attorneys' fees granted were reasonable and not excessive. Appellee is entitled to recover attorney's fees as the prevailing party because the trial court's final judgment found in favor of Appellee and granted Appellee equitable relief. In this case, fee recovery is authorized by both under Texas Civil Practices and Remedies Code and by the express contract between Appellants and Appellee. Alternatively, Appellee had no obligation to segregate attorney's fees because the claim and counterclaim were recoverable and indistinguishable.

The trial court found Appellants liable to Appellee for tortious interference, trespass on real property, and conversion. The trial court properly held that Appellants tortiously interfered with Appellee's existing contracts and prospective contracts by unlawfully locking out Appellee from his leaseholds, which proximately caused Appellee to lose potential patients and business opportunities. Further, the trial court properly held that Appellants trespassed on real property when it went onto Appellee's leasehold while Appellee was current on rent, locked Appellee out, and called the scrapyard to retrieve and dispose Appellee's personal property despite Appellee orally telling Appellants he would come back to retrieve the property. 2 RR p. 29-31.

The trial court also properly held that Appellants committed conversion in wrongfully retaining Appellee's personal property. Appellants wrongfully locked Appellee out of his leasehold despite knowing Appellee still had personal property in the leasehold at the time of lockout. 2 RR p. 16. Remaining items included, but are not limited to, three refrigerators, a copy machine, office furniture, and office supplies for the purposes of storage. 1 CR 455, ¶ 7. Following the lockout, Appellants then called the scrapyard to retrieve and dispose Appellee's personal

property despite Appellee orally telling Appellants he would come back to retrieve the property. 2 RR p. 29-31.

Therefore, for the aforementioned reasons, the trial court's Final Judgment should be affirmed.

## ARGUMENTS AND AUTHORITIES

**ISSUE NUMBER 1: The Trial Court Properly Held that Appellants Breached the Second Floor Leases as there was No Ambiguity as to The Contracts**

### A. Standard of Review

The standard of review urged by the Appellant is the wrong standard of review. Appellants encourage the Court to apply a *de novo* standard to the conclusions of law that the trial court found. However, contract interpretation is a question for the factfinder, and generally the Court should "not disturb the trial court's finding absent an abuse of discretion." *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.) Appellants are not asking for contract construction which would be considered under a *de novo* standard of review. Rather, Appellants ask that the Court find that the trial court erred in its findings. Therefore, the standard of review is *abuse of discretion*, not *de novo*.

In addition, findings of fact entered in a bench trial may be reviewed for legal and factual sufficiency. *Ashcraft v. Lookadoo*, 952 S.W. 2d 907, 911 (Tex. App.—Dallas 1997, pet. denied). "[They] have the same force and dignity of a jury's verdict upon questions" and are only reviewable by the same standards of the sufficiency of the evidence supporting a jury's finding. *See Anderson v. City of Seven Points*, 80 S.W. 2d 791, 794 (Tex. 1991).

When reviewing for factual sufficiency of the evidence, "the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709

S.W. 2d 175, 176 (Tex. 1986). Importantly, appellate courts shall not substitute their judgment for the fact finder's even if they would have personally decided differently, as the trial court must be the sole judge of credibility of witnesses and weight to be afforded to the evidence. *See Small v. Parker Healthcare Mgmt. Org.,* No. 05-11-01471-CV, 2013 WL 5827822, at *3 (Tex. App.—Dallas, Oct. 29, 2013) (mem. op.) (citing *Ashcroft*, 952 S.W.2d at 910).

When reviewing for legal sufficiency of the evidence, the court is to "consider only the evidence and inferences, viewed in the most favorable light, that support the finding, and [the court] must disregard all evidence and inferences to the contrary; If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails." *F.D.I.C. v. F & A Equip. Leasing,* 854 S.W.2d 681, 685 (Tex. App.—Dallas 1993, no writ.) (internal citations omitted). Meaning, if there is a reasonable basis for differing conclusions, there is more than a scintilla of evidence and the Appellee must prevail. *See id.*

As to unchallenged findings, they are "binding on the parties and the appellate court." *Ponderosa Pine Energy, LLC v. Illinova Generating Co.*, No. 05-15-00339-CV, 2016 WL 3902559 at *3 (Tex. App.—Dallas July 14, 2016, no pet.). Where there is a complicated and substantial record from the trial court, the challenging party should attack the Findings of Fact with specificity and should be supported by the evidence. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823 at *6 (Tex. App.—Dallas, August 29, 2017) *reh'g denied* (Sept. 29, 2017), *review denied* (Jan. 12, 2018). However, "where a party's issue globally attacks the trial court's Finding of Fact…the Finding of Fact issued by the Trial Court are binding on the appellate court." *Id.* at *7.

**B. The Second Floor Leases are Not Ambiguous**

The Second Floor Leases are not ambiguous as a matter of law. Further, Appellants prepared the Leases for the Second Floor. Section 13.3 unambiguously states, "[f]ailure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than payment of rent or other charges) *within twenty (20) days after written notice by Landlord* specifying the nature of the default with reasonable particularity." [emphasis added]. 3 RR p. 45. The Second Floor Leases further provide, "[f]ailure of Tenant to comply with any term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges)." 3 RR p. 45.

A contract is not ambiguous when a certain or definite legal meaning or interpretation may be applied. *See R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980). A contract is ambiguous only in the case that after the applicable rules are applied, the contract is still reasonably susceptible to more than one meaning. *See Hughs v. Lee*, 1997 WL 605080, No. 05-95-0145-CV at * 2 (Tex. App.—Dallas Oct. 1, 1997). Notably, a contract is ambiguous only when it is "genuinely uncertain which one of the two meanings is the proper meaning." *See R&P Enters.*, 596 S.W.2d at 519.

It is well established that leases are most strongly construed against the lessor. *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 788 (Tex. 1966). A lease, like other written agreements, should also be given a reasonable construction that carries out the intention of the parties expressed by the language of the contract. *Frank v. Kuhnreich*, 546 S.W.2d 844, 848 (Tex. Civ. App.—San Antonio 1977, writ. ref'd n.r.e.). The contents of a written contract must be "construed as a unified whole unless they are so repugnant and inconsistent as to nullify each other." *See id.* at 848. When appropriate, Courts have found contracts where the meaning and intentions of the parties becomes clear only when clauses are read together. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

Therefore, there is precedent for reading sections together to create an unambiguous contract. *See id.*

Here, Appellants have no basis to argue that the Second Floor Leases are ambiguous. The language of the Second Floor Leases clearly expresses the parties' intentions. The trial court did not add language to the contract as Appellants suggest. Rather, the trial court upheld the express language of the Second Floor Leases. 3 RR 45.

The notice and cure provision of the Second Floor Leases are unambiguous and supported by the Final Judgment, Findings of Fact, Conclusions of Law, and the trial evidence. Section 13.5 defines abandonment as "tenant failing to occupy for five or more days the premises…". 1 CR 455, ¶ 16. Construed together, "abandonment" is an event of default other than for payment of rent or other charges, and therefore, Section 13.3 requires that a landlord give the tenant notice of the default on the property and twenty (20) days opportunity to cure the default. 1 CR 454, ¶ 5. Thus, Appellants had the responsibility to give Appellee notice of the alleged default prior to changing the locks on the Second Floor Leasehold and was required to wait another 20 days for Appellee to cure the alleged default. 1 CR 455, ¶ 11-12. However, this is not how the Appellants acted. Appellants prematurely locked Appellee out of the Second Floor Leasehold and failed to provide notice to Appellee until fifty-two (52) days later, when Appellants alleged the incorrect default for "failing to pay January rent." 1 CR 455, ¶ 7-9; 1 CR 456, ¶ 21.

In the alternative, should the Court find that there are any doubts as to the meaning of the language of the Second Floor Leases, it should be resolved against the landlord, the Appellants, who prepared the Leases. *See Sirtex Oil Industries*, 403 S.W.2d at 788. Thus, the trial court properly found the Second Floor Leases to be unambiguous and that the Appellants breached the Second Floor Leases by locking Appellee out when Appellee was not in default of the Second

Floor Leases. 1 CR 455, ¶ 11; 1 CR 459, ¶ 2-6. The holding was proper, and the Court should uphold the trial court's Final Judgment.

**ISSUE NUMBER 2: The Trial Court Properly Held that Appellants Breached the Second Floor Leases as Appellants Did Not Post Notice Pursuant to Property Code Section 93.002(F) in Addition to Their Contractually Obligated Notice Requirements.**

Appellants failed to comply with Property Code Section 93.002(f) when they did not post notice of default until fifty-two (52) days after Appellants prematurely changed the locks on the Second Floor leaseholds, which is required by the Texas Property Code.

Property Code § 93.002(f) states:

> If a landlord or a landlord's agent changes the door lock of a tenant who is *delinquent in paying rent*, the *landlord or agent must place a written notice on the tenant's front door* stating the name and the address or telephone number of the individual or company from which the new key may be obtained. The new key is required to be provided only during the tenant's regular business hours and only if the tenant pays the delinquent rent.

[emphasis added]. TEX. PROP. CODE. § 93.002(f).

Property Code § 93.002(f) imposes an additional requirement to the 20-day notice and opportunity to cure as provided in the Second Floor Leases. 1 CR 459, ¶ 18. In *Da Oca v. Gutierrez*, the court found that when there is no delinquent rent, lockout procedures were not proper. *See* No. 03-14-00668-CV, 2017 WL 393569 *4 (Tex. App.—Austin Jan. 25, 2017, no pet.). In this case, Appellee was current on paying rent when Appellants locked Appellee out of the Second Floor leasehold. 1 CR 459, ¶ 2-3, 6; 1 CR 455, ¶ 6. Here, Appellee had prepaid rent for December 2016 at the time of the lockout. 1 CR 455, ¶ 6. Appellants allege, after finally posting notice fifty-two (52) days after the lockout, that they changed the locks on the Second Floor leasehold because Appellee failed to pay January rent. 1 CR 456, ¶ 21-22. However, this timing of the lockout and the alleged default does not make logical sense—a lockout at the end of November 2016 does not

align with failing to pay January 2017 rent. Therefore, Appellants cannot reasonably contend that Appellants had the right to change the locks on the Second Floor leaseholds for failing to pay rent.

To add to Appellants' failures, Appellants did not post notice in November 2016 when Appellants changed the locks on the Second Floor leaseholds. Even if Appellee had defaulted on the Second Floor Leases, Appellants did not post notice until January, fifty-two (52) days following the lockout. 1 CR 455, ¶ 9; 1 CR 456, ¶ 21. In fact, Appellants admitted no notice was posted prior to lockout pursuant to Property Code § 93.002(f). 1 CR 456, ¶ 12. Therefore, Appellants failed to meet their duties pursuant to the contract and the Property Code. 1 CR 456, ¶ 12.

In support of their erroneous contention that the Property Code § 93.002(f) does not apply, Appellants cite to *Ayoub v. Montelongo*. 2001 WL 695521 (Tex. App.—El Paso, June 21, 2001, no pet.) (not designated for publication). However, *Ayoub* is readily distinguishable because in that case, the parties did not contractually agree to a twenty (20) day notice and opportunity to cure requirement in their lease. *See id.* Additionally, at issue in *Ayoub* was that the tenant "was going broke" and was delinquent in rent. *See id.* In the present case, at the time of lockout, Appellee was not delinquent on rent, and there was no evidence of financial instability. 2 RR p. 13, 28; (1 CR 455, ¶¶ 6, 13, 14.)

**ISSUE NUMBER 3: The Trial Court Properly Held that There is Not a Specific Contract Provision that Prevails Over General Contractual Provisions.**

The trial court found that there is no prevailing, specific provision because Sections 13.3 and 13.5 should be read together. *See* 1 CR 455, ¶ 11. "Abandonment" is an event of default for which the landlord is required to provide notice and twenty (20) days opportunity to cure. Neither of these provisions conflict with one another nor should one be read as more specific than the other.

Appellants cite to authorities that are distinguishable from the case at hand. Specifically, Appellants cite to *Wells Fargo Bank Minnesota, N.A. v. Kobernick*, which deals with two conflicting terms—a provision with a notice requirement for default and a provision that excepts a particular event. No. 8-CV-1458, 2009 WL 7808949, *1-4 (S.D. Tex. May 29, 2009). Similarly, Appellants cite to *Cedar contracting, Inc. v. Hernandez*, where the court considered a "thirty-day notice requirement" and a conflicting "ten-day notice requirement." No. 03-11-00327-CV, 2014 WL 709560, *1, *4 (Tex. App.—Austin Feb. 21, 2014, pet. denied) (mem. op.). *Trudy's Texas Star, Inc. v. City of Austin* also specifically concerns conflicting provisions. *See generally Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894 (Tex. App.—Austin 2010, no pet.).

In this case, Sections 13.3 and 13.5 are not conflicting, and are thus distinguishable from the cases that Appellants cited. There is no language expressly stating that "abandonment" shall constitute default without the notice required by Section 13.3 and there is no alternate notice requirement as provided for abandonment. 3 RR p. 45. Abandonment is the "[f]ailure of Tenant for five (5) days or more to occupy the Premises." 1 CR 455, ¶ 16. An event of default that is not for the payment of rent or other charges requires a twenty (20) day written notice specifying the nature of the default with reasonable particularity is required. 1 CR 454, ¶ 5. The fact that Section 13.5 does not contain a notice provision is not sufficient to overcome the notice provision prescribed by Section 13.3.

**ISSUE NUMBER 4: Appellants Breached the Contract for the First and Second Floor Leases When They Intentionally Deprived Appellee from Entering the Leasehold and Appellee Could No Longer Enjoy the Use of The Leasehold**

**A. Standard of Review**

Appellants are asking the Court to reverse the judgment despite the great weight and preponderance of the evidence. The trial court found notice of termination was sent post lockout

and ineffective as a matter of law. *See* 1 CR 455, ¶ 12; 1 CR 456, ¶ 21. The fact that Appellants sent notice after the fact insinuates that the Appellants also believed that a notice requirement existed. *Id*.

**B. Appellants Breached the Contract for the First and Second Floor Leases**

Appellants are liable for breaching the contracts Appellee and Appellants had for the First Floor and Second Floor Leases. "The elements for breach of contract are (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach." *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.).

The trial court found that there were valid Leases between Appellee and Appellants for the First and Second Floor Leases. 1 CR 459, ¶ 1. Regarding the Second Floor Lease, Appellee tendered his performance under the contract when he paid for November 2016 rent and prepaid for December 2016. 2 RR p. 13, ¶ 5. The Court found that Appellants breached the Second Floor Lease by unlawfully locking Appellee out of the leasehold when Appellee still had personal property on the leasehold, had paid for the leasehold in full, and was not in default for the leasehold in any other way. 1 CR 459, ¶ 2-3, 6.

Appellee gave notice to Appellants that he would be moving some things from the Second Floor Lease leasehold on November 28, 2016. 1 CR 455, ¶ 7-8. Appellee even told Appellants that he intended to continue paying for the Second Floor Lease. 1 CR 455, ¶ 8. Appellants breached the Second Floor Lease when Appellants changed the locks on November 30, 2016. 1 CR 455, ¶ 9. Appellants claim that their entering the leasehold, rekeying the locks, and alleged that throwing away Appellee's personal property was justified because Appellee had abandoned the Property. 2 RR p. 47, lines 4-7. However, Section 13.5 in the Second Floor Leases expressly defines

"abandonment" as the tenant failing to occupy for *five or more days* the premises for one or more of the purposes permitted under this lease. 1 CR 455, ¶ 15-16 [emphasis added]. Appellee had not abandoned the leasehold at the time of the lockout because it had only been two (2) days of unoccupancy over a holiday weekend that Appellants changed the locks. *Id*.; *See* 1 CR 455, ¶ 7, 9, 15.

Additionally, even if Appellee defaulted by abandonment, the Second Floor Lease required Appellants give Appellee written notice specifying the nature of their default and twenty (20) days to cure the default. 1 CR 459, ¶ 18. However, Appellants did not provide notice. Thus, the trial court reasonably concluded that Appellants breached and therefore Appellee was justified for discontinuing to pay rent for the remainder of the Second Floor Leases (1 CR 459, ¶ 14) when Appellants had locked Appellee out, threw away his personal property, and did not give him any way to remedy the alleged default. 1 CR 456, ¶ 18-20. Further, Appellants did not give notice to Appellee how to regain entry onto the leasehold and thereby breached the Second Floor Leases. 1 CR 456, ¶ 20; 1 CR 459, ¶ 13.

The evidence clearly establishes that Appellee did not abandon, Appellee did not breach, Appellants locked Appellee out, and thus the Appellants breached the Second Floor Lease. 1 CR 455, ¶ 7-9; 1 CR 459, ¶ 2-3, 6, 13. Appellee was current on all rent payments, had prepaid rent for the following month, and that Appellants unlawfully locked Appellee out of the Second Floor leaseholds without providing any notice. 1 CR 455, ¶ 6; 1 CR 459, ¶ 2-3; 1 CR 459, ¶ 18; 1 CR 456, ¶ 29. Evidence establishes that Appellee did not fail to occupy the Second Floor leasehold for more than five (5) days because he still had personal property on the leasehold and told Appellants that he would return for the property. 1 CR 455, ¶ 7-9. Moreover, because Appellee made it clear

that he intended to continue to occupy the Second Floor leaseholds when he told Appellants that he would continue to make rent payments for the Lease term. *Id*.

With respect to the First Floor Lease, the trial court found that Appellants unlawfully locked Appellee out of the First Floor Lease on March 30, 2017. 1 CR 457, ¶ 35. Appellee was current on rent for the First Floor Lease and was otherwise not in any other default for the leasehold. 1 CR 460, ¶ 29-30. According to their Lease, Appellants agreed to provide "exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the leased premises during the term of [the] Texas Commercial Lease." 1 CR 460, ¶ 31.

Appellants breached the First Floor Lease when they locked Appellee out of the First Floor leasehold on March 30, 2017. 1 CR 457, ¶ 35. Under section 93.002(c) of the Texas Property Code, a commercial landlord is prohibited from intentionally preventing a tenant from entering a leased premises. 1 CR 460, ¶ 32. Further, Appellants failed to place written notice on the tenant's door or give them contact information to retrieve a new key upon curing the claimed default for delinquent rent payments. 1 CR 457, ¶ 36. Therefore, Appellants violated section 93.002(f) of the Texas Property Code which requires a commercial landlord to give tenant written notice of the default and contact information to retrieve a new key upon curing the delinquent rent payment. TEX. PROP. CODE § 93.002(f); 1 CR 457, ¶ 33; 1 CR 460, ¶ 33; 1 CR 461, ¶ 41.

After the unlawful lockout and not posting any notice for how to cure the claimed default, Appellee had to resort to self-help to regain possession of the First Floor leasehold. 1 CR 457, ¶ 39. After applying for and receiving a Writ of Reentry from the Justice Court (1 CR 457, ¶ 38), Appellants forcibly entered the First Floor leasehold, forced Appellee and his staff of healthcare professionals to vacate the leasehold and chained the door shut with a large metal chain and padlock. 1 CR 457, ¶ 35-42. The next day, Appellants removed the marquee sign for Appellee's

business. 1 CR 457, ¶ 43. As a result, Appellee suffered damages by being unable to conduct his business and causing lost business income and wages. 1 CR 457, ¶ 31-32; 1 CR 458, ¶ 50-53; 1 CR 460, ¶ 20-21; 1 CR 461, ¶ 35-36.

Appellants intentionally prevented Appellee from entering the First Floor and Second Floor Leases by changing the locks and throwing away Appellee's personal property, thus constructively evicted them, and forced Appellee to abandon the Property. 1 CR 459, ¶ 9-16. The trial court found the Appellants' measures substantially interfered with Appellee's use and enjoyment of the leaseholds. 1 CR 459, ¶ 11. The trial court further found that Appellants intended to permanently deprive Appellee from the First and Second Floor Leases. 1 CR 459, ¶ 12. As a result, Appellee lost personal property, lost business opportunities, lost wages and income, as well as lost good rapport with his patients. 1 CR 454, ¶ 7; 1 CR 456, ¶ 19.

Therefore, Appellants failed to sufficiently and specifically overcome a factual and legal sufficiency review. Appellants failed to meet the high burden of the great weight and burden of preponderance of the evidence. It is clear from the record that Appellants breached the Second Floor Leases when they prematurely locked Appellee out of the Second Floor leaseholds when Appellee had not abandoned the leaseholds, was not delinquent on rent payments, nor in default as to any other respect of the Second Floor Leases. Additionally, Appellants did not post notice of the alleged default, did not provide time to cure the default, and failed to provide a way to obtain a new key for the leaseholds. 1 CR 455, ¶ 11-12; 1 CR 459, ¶ 18. It is also clear from the record that Appellants breached the First Floor Lease when they changed the locks even though Appellee was not in default for any provision of the First Floor Lease, and chained the doors shut and took down the marquee sign after Appellee had to seek out a writ of reentry and a temporary restraining order. 1 CR 460, ¶ 28; 1 CR 457, ¶ 37-43. Thus, it is a rational and reasonable conclusion as from

the weight of the evidence and Findings of Fact, Appellants breached the Second Floor Leases. Appellants failed to meet the high burden to show that the trial court was wrong to conclude in favor of Appellee.

**ISSUE NUMBER 5: The Trial Court Properly Held that Appellants Prior Materially Breached and Failed to Mitigate Damages**

Appellants committed a prior material breach, thus discharging Appellee of his duties under the contract. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196, 198 (Tex. 2004) (per curiam). To determine if a breach is material, the court weighs the following five circumstances: the extent to which the injured party will be deprived of the benefit which he reasonably expected; the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; the extent to which the party failing to perform or to offer to perform will suffer forfeiture; the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; and the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. *See id.* at 199.

Here, Appellants took unlawful remedial measures to lock Appellee out of the Second Floor leaseholds without Appellee abandoning the Second Floor leaseholds or otherwise being in default on the Second Floor Leases. 1 CR 459, ¶ 2-3, 6. Appellants were not justified to act against Appellee because Appellee never defaulted on any of the Second Floor or First Floor Leases. 1 CR 459, ¶ 1-3, 1 CR 460, ¶ 28-30. By breaching the Second Floor and First Floor Leases before the Leases were set to terminate, Appellants deprived Appellee of the use and enjoyment of the leaseholds, deprived Appellee of business opportunities, wages, income, and personal property. 1

CR 459, ¶ 10-12, 1CR 460, ¶ 23-25, 1 CR 461, ¶ 43. Further, Appellants forcibly removed Appellee from the First Floor leasehold by chaining the door shut and removing the marquee sign outside the leasehold. 1 CR 457, ¶ 42-43. Appellants only had the right to take remedial measures if Appellee defaulted on any of the Leases. Therefore, the trial court agreed and found that Appellants breached the First Floor and Second Floor Leases, thus Appellee was in the right to abandon the leaseholds and not pay for the remainder of monthly rents.

Furthermore, when a tenant abandons a commercial property, a landlord has a duty to make reasonable efforts to mitigate damages. *See Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). A landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the tenant in that the damages reasonably could have been avoided. *See id.* at 299. Here, Appellee suffered damages as a result of Appellants' breach. 1 CR 457, ¶ 32, 1 CR 458, ¶ 51. Appellants never presented any evidence that they attempted to mitigate damages. As such, the trial court properly found in favor of Appellee as to Appellants' affirmative defense of failure to mitigate damages. *See* 1 CR 2319. Therefore, because of Appellants' failure to reasonably attempt to mitigate damages, Appellants cannot recover against Appellee in that regard.

**ISSUE NUMBER 6: The Trial Court Properly Held that Appellee was Entitled to Reasonable and Necessary Attorney's Fees Because He was the Prevailing Party**

Appellee is entitled to recover attorney's fees as the prevailing party because the trial court's Final Judgment found in favor of Appellee and granted Appellee equitable relief. First, the trial court properly concluded Appellee is entitled to recovery of attorney's fees because Appellee is authorized under Texas law and by the contract terms agreed to in the Second Floor Leases. Generally, a litigants' attorney fees are recoverable if authorized by a statute or by a contract between the parties. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650

(Tex. 2009); *Farrar v. Hobby*, 113 S.Ct. 566, 506 U.S. 103 (1992). Additionally, the Texas Civil Practices and Remedies Code § 38.001 permits recovery of attorney's fees when a party prevails over a breach of contract claim. Tex. Civ. Prac. & Rem. § 38.001. More specifically, Texas law holds that "trial court[s] ha[ve] no discretion to deny" an award of reasonable attorney's fees if a plaintiff prevails on a breach-of-contract claim and recovers damages. *Tuttle v. Builes*, 2019 WL 1301881, No. 11-17-00096-CV, at *9 (Tex. App.—Eastland, 2019) (citing *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009)).

In this case, fee recovery is authorized by both under Texas Civil Practices and Remedies Code and by the express contract between Appellants and Appellee. First, Section 29.1 of the Second Floor Leases authorizes attorney's fees to be recovered. Specifically, it states "the defaulting party shall pay, immediately upon demand, the other party's reasonable attorney's fees, collection costs, costs of litigation." 1 CR 128, ¶ 29-29.1. Thus, Appellee is authorized to recover attorney's fees by the parties' express agreement as found in the Second Floor Leases.

Secondly, Appellee is entitled to attorney's fees because the Final Judgment found Appellee was the prevailing party on its breach of contract claims. For a party to prevail on a claim, the Supreme Court of the United States holds a plaintiff must gain actual relief on the merits of his claim." *Intercontinental Grp. P'ship*, 295 S.W.3d 650 (Tex. 2009) (citing *Farrar v. Hobby*, 113 S. Ct. 566, 506 U.S. 103 (1992)). The gained relief must "materially alter the legal relationship between the parties" in a way which "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff." *Intercontinental Grp. P'ship*, 295 S.W.3d 650 (Tex. 2009) (citing *Farrar v. Hobby*, 113 S. Ct. 566, 506 U.S. 103 (1992)). Essentially, the Supreme Court states the plaintiff must obtain affirmative judicial relief to be a prevailing party. *Intercontinental Grp.*, 295 S.W.3d at 655-56 n.17.

In this case, Appellee not only was held as the prevailing party, but also gained affirmative judicial relief. First, in their Final Judgment the trial court stated Appellee was a prevailing party because,

> The Court finds in favor of Plaintiff and against Defendants as to Plaintiff's claims for Breach of Contract, Interference with Existing Contract, Interference with Prospective Contracts, Trespass to Real Property, and Conversion;
> The Court finds in favor of Plaintiff and against Defendants as to Defendant's affirmative defense of failure to mitigate damages;
> The Court finds in favor of Plaintiff and against Defendants as to Defendants' claim for Breach of Contract;
> The Court finds in favor of Plaintiff and against Defendants as to Plaintiff's affirmative defense of prior material breach;
> The Court finds that Plaintiff, having selected to recover on his claim for breach of contract claim against Defendant Christine, is entitled to damages, reasonable and necessary attorneys' fees, and costs of court;

Final J., 1 CR 2319-21. Thus, as the prevailing party, Appellee is entitled to recover attorney's fees. In addition to being the prevailing party, Appellee received affirmative judicial relief. Prior to trial, the trial court granted Appellee's Temporary Restraining Order against Appellants. This injunctive relief materially altered the relationship between the parties, because it ordered the Appellants to be temporarily restrained from:

> interfering with Plaintiff's business by directly or indirectly wrongfully locking out Plaintiff, himself, and his officers, vendors, providers, agents, contractors, doctors, and employees, including act of changing the locks of the leasehold; directly or indirectly falsely imprisoning Plaintiff's patients or doctors, employees; interfering with Plaintiff's business by directly or indirectly wrongfully preventing access to Plaintiff's Lease by blocking the parking lot interfering with Plaintiff and the Plaintiff's business by, within five (5) days of the Temporary Restraining Order, returning all personal property, business personal property, cash, employee information, employee lists, customer lists, private information regarding doctors, employees, the business, and customer information that have been removed from the business including, but not limited to, the marquee sign removed from the premises; interfering with Plaintiff's business by, directly or indirectly, wrongfully taking possession of Plaintiff's personal property or business property; directly or indirectly making untruthful or disparaging statements against Plaintiff; committing any act which would make it impossible to carry on the ordinary course of business of Plaintiff;

TRO, 1 CR 8, ¶ 8-10. Therefore, in addition to being named as the prevailing party, the trial court granted affirmative judicial relief from the Temporary Restraining Order which the Appellee directly benefitted from—thereby entitling Appellee to attorney's fees.

In conclusion, Appellee is the prevailing party entitled to recover reasonable attorney's fees both under the Texas Civil Practice and Remedies Code and as the prevailing party. Therefore, the trial court properly granted Appellee attorney's fees.

## A. Appellee Is Entitled to Attorney's Fees Because Appellee Prevailed On The Indistinguishable Counterclaim.

Alternatively, Appellee had no obligation to segregate attorney's fees because the claim and counterclaim were recoverable and indistinguishable. Generally, attorneys are required to segregate fees for legal services between recoverable and nonrecoverable claims. *See Navigant Consulting, Inc. v. Wilkinson*. 208 F.3d 277, 298 (5th Cir. 2007). The question to the extent whether claims can or cannot be segregated is a mixed question of law and fact for factfinder. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312-13 (Tex. 2006). However, Appellee qualifies for the exception to the general rule.

The exception to recovering for defense of a claim applies when "the matters encompassed by the claim and counterclaim are indistinguishable." *De La Rosa v. Kaples*, 812 S.W.2d 432, 434 (Tex. App.—San Antonio 1991, writ denied); *Tony Gullo Motos I, L.P. v. Chapa*, 212 S.W.3d, 50 Tex. Sup. Ct. J. 278 (Tex. 2006).

A claim and counterclaim are indistinguishable where they arose from the same transactions, and where the same facts required to prosecute the claim are required to defend against the counterclaim. *Veale v. Rose*, 657 S.W.2d 834, 841 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied); (citing *First Wichita National Bank v. Wood*, 632 S.W.2d 210 (Tex. App.—Fort Worth 1982, no writ)); *Wilkins v. Bain*, 615 W.S.2d 314 (Tex. Civ. App.—Dallas

1981, no writ); *Ortiz v. O.J. Beck and Sons, Inc.*, 611 S.W.2d 860 (Tex. App.—Corpus Christi 1980, no writ.); *See also Williamson v. Tucker*, 615 S.W.2d 881 (Tex. App.—Dallas 1981, writ ref'd n.r.e.)). In the event a plaintiff's breach of contract claim and a defendant's counterclaim arises from the same transaction and the same facts required to prosecute the claim are required to defend against the counterclaim," attorney's fees are then appropriate for the defendant's counterclaim. *See* V.T.C.A., Civil Practice & Remedies Code § 38.001; *Brockie v. Webb*, 244 S.W.3d 905 (Tex. App.—Dallas, 2008); *See Hooker v. Constellation Homebuilder Sys., Inc.*, 2008 WL 4057909, No. CIV. A. V-06-77, at *5 (S.D. Tex. Aug. 26, 2008).

For example, courts have found claims and counterclaims to be indistinguishable when they concern disputes over the same contract. For example, in *Veale v. Rose* the Corpus Christi Court of Appeals held a claim and counterclaim were indistinguishable when both claims alleged breaches of the same contract. 657 S.W.2d 834 (Tex. App.—Corpus Christi-Edinburg, 1983). The *Veale* Court reasoned that the two claims were so interrelated, that the counsel spent "no more time in preparation to defend against the counterclaim than was necessary to meet appellant's defenses to the primary lawsuit." *Id.* at 841. Additionally, in *De La Rosa v. Kaples*, the San Antonio Court of Appeals also found a claim and counterclaim to be indistinguishable when the matters encompassed the same contract and transaction. *De La Rosa*, 812 S.W.2d at 434.

Similarly, in our case, the claim and counterclaim are indistinguishable because they are both breach of contract claims for the same contract—the Commercial Lease for the First Floor and the Commercial Leases for the Second Floor. Appellee and Appellants sued one another on respective breach of contract claims. Appellee's claim and Appellants counterclaim arise out of the same facts—breach of the First Floor and Second Floor Leases. Pl.'s First Am. Pet., 1 CR 343, ¶ 44-47. Appellee was successful on his breach of contract claim by receiving affirmative judicial

relief, thus Appellee was the prevailing party. Additionally, because claim and counter claim were indistinguishable, Appellee was not required to segregate fees prosecuting their own claim and defending the counterclaim. Appellants then counterclaimed against Appellee for their breach of contract claim, arising from the same facts. Def.'s Third Am. Answer and Countercl., 1 CR 381, ¶ 10-14. Specifically, the facts for Appellee's claim, and Appellee's defense of the counterclaim both relied on Appellants' breach of the First Floor and Second Floor Leases when it locked Appellee out of the leaseholds and failed to provide written notice and opportunity to cure. 1 CR 456, ¶ 21-23. Thus, the claim and counterclaim are indistinguishable because they both require the facts. The trial court properly held that Appellee was entitled to attorney's fees because not only was it the prevailing party but the matters encompassed by the claim and counterclaim are indistinguishable and thereby Appellee was not required to segregate fees.

**B. Attorneys' Fees Granted Were Reasonable and Not Excessive**

The sum of seventy-five thousand and thirty-three dollars ($75,033.00) is reasonable and necessary attorney's fees for litigating the present case through a bench trial. The Texas Supreme Court has confirmed the lodestar method for the calculation of necessary and reasonable attorney's fees. *See Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at \*20 (Tex. Apr. 26, 2019). The Court held that "the fact finder's starting point for calculating attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate," and the fee claimant bears the burden of providing sufficient evidence. *Id.* at \*20 (Tex. Apr. 26, 2019). Sufficient evidence is met by evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See id.* at \*20 (citing *El Apple*, 370 S.W.3d at 762-63). Further, the Court held a

"reasonable" attorney's fee is "one that is not excessive or extreme, but rather moderate or fair." *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).

In general, clear and uncontroverted evidence of attorney's fees is taken as true as a matter of law. *Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App.—Austin, 2001) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881-82 (Tex. 1990)). Further, uncontroverted evidence of attorney's fees is especially taken as true as a matter of law when the opposing party has not rebutted the evidence. *Id*. Moreover, courts may "draw upon its common knowledge and experience" to determine the amount that is reasonable and necessary. *Moreno v. Reliable Insulation, Inc.*, 217 S.W.3d 769, 770-71 (Tex. App.—Dallas, 2007).

Here, Appellee provided clear and uncontroverted evidence of its attorney's fees. As shown in the Affidavit of Tailim Song, Appellee provided sufficient evidence of the services performed, such as Tailim Song's appearance at motion hearings, drafting and reviewing discovery and documents, and appearing and proceeding through trial, and the dates of when the services were performed. *See* 2 CR Supp. 2349-2355. In addition, the affidavit provided sufficient evidence of who performed the services such as by Tailim Song, and his Associates Jordan Whiddon, Joseph Skaist, and Haben Tewelde and their reasonable hourly rate that is customary for a lawyer with their level of experience. *See* Aff. of Tailim Song, 2 C.R. Supp. 2323-2325, ¶ 1-7. Accordingly, Appellee has met their burden of providing sufficient evidence for the lodestar method, which is presumptively reasonable. *Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at *20 (Tex. Apr. 26, 2019). Thus, Appellee has provided clear and uncontroverted evidence its attorney's fees of seventy-five thousand and thirty-three dollars ($75,033.00) are reasonable and not excessive for litigating the present case.

**ISSUE NUMBER 7: The Trial Court Properly Held That Appellants Tortiously Interfered with the Contract, Tortiously Interfered with prospective Contracts, That Appellants**

**Trespassed on Real Property, and Appellants Committed Conversion**

Moreover, the trial court held that Appellants are liable to Appellee for tortious interference with the existing contracts as well as prospective contracts, trespass on real property, and conversion. Appellants tortiously interfered with the existing contracts for the First and Second Floor Lease when they unlawfully locked out Appellee from his leaseholds, proximately causing Appellee to turn away potential patients and lose business opportunities. To prove that a defendant tortiously interfered with the existing contract, the plaintiff must prove that "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Here, Appellants locked Appellee out of the leasehold without notice or opportunity to remedy the situation. 1 CR 455, ¶ 12; 1 CR 457, ¶ 36. As a direct result, Appellee lost business profits, wages, and personal property. 1 CR 458, ¶ 51; 1 CR 460, ¶ 32. Further, Appellants kept all security deposits Appellee paid for the Second Floor and First Floor leaseholds worth $2,552.00. 1 CR 457, ¶ 31; 1 CR 459, ¶ 13-14; 1 CR 460, ¶ 23-27. Appellee's losses only happened as a result of Appellants' unlawful actions. Otherwise, Appellee would still be operating its business in the Second Floor and First Floor leaseholds and would be running a profitable and sustainable business. 1 CR 460, ¶ 23-27.

"To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious

or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss as a result." *McConnell v. Coventry Health Care Nat'l Network*, No. 05-13-01365-CV, 2015 WL 4572431, at *6 (Tex. App. July 30, 2015).

Appellants consciously interfered with Appellee's business operations on April 12, 2017, Appellant Francis Anthony Desio, retaliated against Appellee when he blocked the entrance to the First Floor leasehold, falsely imprisoned, yelled at and threatened Appellee's patients and professional staff. 1 CR 20, ¶ 17. Appellant Francis Anthony Desio further forced Appellee, his professional staff, and patients to leave the First Floor leasehold, causing them to fear for their safety, thus leaving the leasehold. 1 CR 20, ¶ 17; 1 CR 21, ¶ 18. As a consequence of Appellants' tortious and unlawful actions, Appellee's staff have not been able to work or conduct their business, so they have left to work elsewhere. 1 CR 23, ¶ 31. Additionally, potential patients went elsewhere for treatment. *See id.* Appellee took the time and effort to train the medical professionals he hired for his business and has developed a professional working relationship with them. 1 CR 23, ¶ 29.

The trial court found that Appellants constructively evicted Appellee from the Second Floor leaseholds. Appellants constructively evicted Appellee when they intentionally changed the locks on the door, and threw away Appellee's personal property, depriving Appellee of the use and enjoyment of the Leasehold. 1 CR 459, ¶ 9 For a landlord to constructively evict a tenant, they must: (1) An intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstances; (2) A material act by the landlord or those action for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; (3) The act must permanently deprive the tenant of the use and enjoyment of the premises; (4) The tenant must abandon the premises within a

reasonable time after the commission of the act. *Metroplex Glass Cent., Inc. v. Vantage Props., Inc.*, 646 S.W.2d 263, 265 (Tex. App.—Dallas 1983, writ refused n.r.e.).

. Appellants intentionally prevented Appellee from entering the leaseholds, Appellants had the intent to permanently exclude Appellee from the Leaseholds, and Appellants intended the Appellee no longer enjoy the Leaseholds. 1 CR 456, ¶ 23-28; 1 CR 459, ¶ 10-12; 1 CR 455 ¶ 10, 1 CR 456  ¶ 23, 24. Further, after the lockout, Appellants never gave Appellee new keys and was never allowed back into the space. 1 CR 456, ¶ 20.

Appellant's lockout substantially interfered and permanently deprived Appellee the use and enjoyment of the Second Floor Lease because Appellee never regained access into the leasehold nor provided a place to pick up a key. 1 CR 456, ¶ 18; 1 CR 456, ¶ 26; 1 CR 456, ¶ 29. Therefore, Appellee lost personal property and could not operate his business efficiently and effectively without the personal office equipment. *See* 1 CR 456, ¶ 18. Moreover, the trial court found that Appellants intended to permanently deprive Appellee of the space because Appellants had no reason to act the way they did other than for the desire to prevent Appellee from using the Leaseholds. 1 CR 459, ¶ 10-12. As a result, the trial court properly concluded that Appellee's forced abandonment of the Second Floor Leasehold was a reasonable time after the lockout. 1 CR 456, ¶ 27; 1 CR 460, ¶ 27.

Appellants thus trespassed onto Appellee's real property when they changed the locks on the doors and purposely avoided giving Appellee notice and opportunity to receive a new key. 1 CR 455, ¶ 9; 1 CR 456, ¶ 20-21. Trespass on real property "is an unauthorized entry upon the land of another and may occur when one enters—or causes something to enter—another's property." *Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 36 (Tex. App. 2017), *review denied* (Sept. 8, 2017) citing to *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011).

"To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) defendant's trespass caused injury to the plaintiff." *Lakeside Vill. Homeowners Ass'n*, 545 S.W. at 36, citing to *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).

Here, Appellee and Appellants had valid contracts for the Second Floor and First Floor leaseholds for office space and a healthcare business, respectively. 1 CR 459, ¶ 1. Thus, Appellee had the right to access and possess the leaseholds. Moreover, Appellants could not intentionally prohibit Appellee from entering the leaseholds. *See* TEX. PROP. CODE § 93.002(c), 1 CR 459, ¶ 17.

However, Appellants entered Appellee's leaseholds without authorization, took Appellee's possessions, and locked Appellee out. 1 CR 455, ¶ 7-9; 1 CR 456, ¶ 19-20. Further, Appellants knew that by preventing Appellee from entering the Second Floor and failing to provide a reason for their actions without any way to remedy the situation (1 CR 456-457, ¶ 29-31; 1 CR 458, ¶ 48-49), Appellants caused unnecessary disruption and permanently prevented Appellee from using and enjoying the leaseholds. 1 CR 459, ¶ 8-12; 1 CR 460, ¶ 23-25 This trespass caused Appellee's lost business revenue, wages, and use and enjoyment of the leaseholds. *Id.*; 1 CR 460, ¶ 20; 1 CR 461, ¶ 35. Thus, Appellants are responsible to Appellee for trespassing on their property.

Moreover, the trial court properly held that Appellants committed conversion when Appellants wrongfully retained Appellee's personal property. To prevail on a claim of conversion, a plaintiff must prove (1) he owned or had possession of the property; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the

property; and (4) the defendant refused to return the property. *See Scott Pelley P.C. v. Wynne,* No. 05–15–01560–CV, 2017 WL 3699823, at \*11 (Tex. App.—Dallas Aug. 28, 2017, pet. denied).

Here, Appellants wrongfully locked Appellee out of his leasehold despite knowing Appellee still had personal property in the leasehold at the time of lockout. 2 RR p. 16. Remaining items included, but are not limited to, three refrigerators, a copy machine, office furniture, and office supplies for the purposes of storage. 1 CR 455, ¶ 7. Following the lockout, Appellants then called the scrapyard to retrieve and dispose Appellee's personal property despite Appellee orally telling Appellants he would come back to retrieve the property. 2 RR p. 29-31. Thus, the trial court properly found in favor of Appellee that Appellants committed conversion. *See* 1 CR 446-48.

## CONCLUSION

The trial court's Final Judgment should be upheld because the trial court properly found that Appellee did not breach the Second Floor or the First Floor Leases, that Appellants acted prematurely in violation of the First and Second Floor Leases as well as the Property Code, and that as a result of Appellants' actions, Appellee lost personal property, wages, business earnings, patients, as well as reputation in the community. Thus, as the prevailing party, it is proper that Appellee should be awarded attorneys' fees.

## PRAYER

For these reasons stated above, Appellee Mike Del Bosque D/B/A Injury and Rehab Center in Grand Prairie respectfully prays that the Court sustain its allegations of error and affirm the December 19, 2018 Final Judgment.

Respectfully submitted,

*/s/ Tailim Song*

_____
**Tailim Song**
State Bar No. 00792845

tsong@tailimsong.com
Tel:    (214) 528-8400
Fax:    (214) 528-8402
8111 Lyndon B. Johnson Fwy Suite 480
Dallas, Texas 75251
***ATTORNEY FOR APPELLEE***

## RULE 52.3(J) CERTIFICATION

I have reviewed the Brief of Appellee and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

***/s/ Tailim Song***

_____
Tailim Song

## CERTIFICATE OF COMPLIANCE

I hereby certify that I prepared the foregoing brief using Microsoft Word 2019 software, a 14-point Times New Roman font for all text and a 12-point Times New Roman font for any footnotes. According to that program's word-count function, the sections covered by TRAP 9.4(i)(1) contain 12,329 words, including footnotes.

***/s/ Tailim Song***

_____
Tailim Song

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief was delivered to the following party in accordance with the Texas Rules of Appellate Procedure on this 18th day of June 2019:

Bush Rudnicki Shelton, P.C.
Grant A. Bannen
State Bar No.  00793300
200 N. Mesquite St., Suite 200
Arlington, Texas 76011
Tel: (817) 274-5992
Fax: (817) 261-1671
*ATTORNEYS FOR APPELLANT*

*/s/ Tailim Song*

_____

Tailim Song